Now I will call the first case. Case number 127443, agenda number 22, People of the State of Illinois v. Demetrius Johnson. Joshua Alan Tepper, please begin. Good morning, Chief Justice, Justices, Counsel. May it please the Court, my name is Joshua Tepper, and it has been one of the privileges of my lifetime to represent this man, Demetrius Johnson. Who is present in court and seated behind me. And I do think in the context of this case, in particular, Mr. Johnson's presence in this courtroom is significant and should not be overlooked. It's a stark reminder that a real individual is involved in this case. And I say that in part for the benefit of the students who are watching this proceeding today, and I say it because there are some very interesting legal issues that are presented in this case. Statutory questions, applications of constitutional protections, whether this court or courts in this state are permitted to act as equitable backstops. And obviously we're going to spend a lot of time talking about those. But I don't want to lose sight of the facts of the application of those legal principles apply to this real man in the courtroom and the petitioner who lived the facts of this case. And those facts are both disturbing and 100% undisputed. They start in the middle, in the summer of 1991, when this man Demetrius Johnson, who's my age, 47, was just 15 years old. In June of 1991, a man named Edwin Fred was killed at point blank range from gunfire in Chicago. Fred's friend was standing right next to him, identified the perpetrator not as Demetrius Johnson but as a man named Brian Johns that very night in a lineup at the police station. And then, unbeknownst to anyone else, and for reasons frankly that are totally unknown, a corrupt Chicago homicide detective named Rinaldo Guevara let Brian Johns go and subsequently framed Demetrius Johnson. The 15-year-old Demetrius Johnson for this killing. Detective Guevara hid the exculpatory lineup report from that night. He committed perjury at Demetrius Johnson's trial. And while Demetrius Johnson was charged, convicted, and then sentenced when he served 13 years in prison. He was released in 2004. And then in 2006, Demetrius Johnson was arrested for possessing a gun on the street. He was charged and convicted of being a felon in possession of that gun. The felony was the Fred murder in 1991. And Demetrius Johnson then served, was sentenced to serve another three and a half years sentence. That UUWF conviction is the only conviction, the only taint on this man's record. And that's because in 2019, Rinaldo Guevara's horrific misconduct was discovered and brought to light. And as soon as Demetrius Johnson found out about it, as soon as he did, 28 years later, he successfully moved to vacate that murder conviction. And the state almost immediately agreed. It was, quote, from the state's position, an obvious Brady violation. Johnson not only proved that obvious Brady violation, but he subsequently proved that he was actually innocent. There were proceedings. The crucial evidence of that innocence, of course, was detected, the witness identification of the different perpetrator that Detective Guevara hid and perjured himself about. Demetrius Johnson has a certificate of innocence for that murder conviction. So the question now before this court is really what about that 2006 UUWF conviction? Should it be vacated too? Now that we know Guevara committed this horrific misconduct and Johnson was and is innocent of that predicate murder, should Demetrius Johnson be made to suffer the consequences of a felony conviction? Demetrius Johnson has a conviction on his record for the rest of his life, which includes the curtailment of his own Second Amendment rights under the circumstances where a government actor himself, Guevara, caused an innocent boy's conviction. Under these factual circumstances, I hope and pray that people agree with me that there is a clear and equitable and just result, that he should not have to live with that forever tainted, that for something that, had he not been framed, wouldn't be a crime at all. And the good news in my mind is there are a variety of legal vehicles, all of which get to this just and equitable result. Counsel, let me ask you a question. So at the time that your client was arrested for unlawful use of a weapon by a felon, he was considered a felon, is that correct? That's correct. He was aware of his status as a felon? He was aware of his status as a felon, that's correct. But he elected to possess a weapon anyway? He did possess a weapon anyway, after growing up in prison, a violent place by any means, and he was, according to the police report, had a weapon for protection at that point, that is true. And so does the McFadden case control the outcome in this matter? Well, I think what I briefed in entirely is McFadden, if McFadden is the path that this court takes, it probably controls this matter. But two years later, in N.G., McFadden, and the quote from N.G. is fairly straightforward. It says, McFadden is hereby overruled to the extent that N.G. conflicts with it, paragraph 84. Paragraph 76 of N.G. says, it talks about the need to admit our mistake. Paragraph 75 of N.G. specifically says that the appellate court's finding took, the appellate court in McFadden, that was overruled, took the proper analytical approach. So I think, as explicit as it gets, that McFadden is not clearly controlling in this case. In paragraph 76, you mentioned paragraph 76. N.G. says, had our analysis in McFadden taken into account the distinction between a prior conviction resulting from a constitutionally deficient procedure and one based on a facially unconstitutional statute, the approach we took in that case would have been different. So N.G. itself acknowledges the distinction between N.G. and what's happening here. Absolutely. So, I mean, the issue is whether and to what extent N.G. overruled McFadden or the two are distinguishable. Certainly. I mean, I think the other, I mean, the issue is N.G., I mean, I can't stand up here and say N.G. is totally on point either. It's about a void ab initio statute, and that is the idea that, you know, it never existed. And that was the distinguishing factor, at least for the analysis of N.G. of why it shouldn't apply. And, of course, N.G. goes to termination of parental rights, a finding of unfitness, right? Certainly. I mean, I don't hide from it. It's not like N.G. is on all fours in this case. There's no question about that. The question is, what I view as N.G. standing for is that McFadden wasn't a workable, in all respects, a decision. And the question is whether, what we do about that. Whether we're comfortable, we weren't comfortable in N.G. in excluding, in taking away someone's parental rights based on what was really, wasn't a crime at all. Can we talk about stare decisis? Sure. This very foundational idea about subtle law. So, just so that we can all know what we're talking about here. In 2016, this court was presented with an issue in the case of Peeble v. McFadden. It is almost, well, it is exactly the same issue that's in this case. The person had been convicted of a prior felony, was convicted then of unlawful use of a weapon by a felon, having previously been convicted of a felony of offense. And there were issues raised about whether that conviction could stand, that unlawful use of a weapon by a felon could stand. It was fully briefed, fully argued. In fact, I will just tell you personally, I felt like deja vu reading your brief. Oh, wow. All these cases, all these names I haven't really thought about. Lewis, I spent hours of my life reading Lewis. And now you're bringing back exactly the same arguments that were based on the same cases that was presented to this court in 2016 and rejected. Now, we're having some discussion here that two years later this court dealt with a similar issue in this case called In Re NG. And the questions we're talking about here is, I was going to say a little different. That case is a lot different from McFadden and this case. So I think our question is why should this court walk away from a decision it made six years ago based on the same arguments that were made then? Why should the stare decisis control? Okay. Somewhat hesitant, but obviously in the last year the U.S. Supreme Court has taken different positions on stare decisis. And, you know, I'm obviously referring to the Dobbs case in the U.S. Supreme Court. And I think there's at least some propositions of law that we can take from that. And that is one of them is did the controlling precedent prove unworkable? And I think what NG stands for, and I hope this case also stands for, is it does appear to be unworkable as far as like just an equitable result. So that is one thing I would say. The second thing I would say, and I don't want to avoid the question straight on about McFadden, but there is an entirely different statutory path that can be taken in this case that is totally different from NG and McFadden himself. And that is putting aside the UUWF statute at all is just looking at Section 2-1401 statute. And that is something totally different. And what I'm saying is when there's a fact-based challenge to, when there's newly discovered facts, so to speak, that couldn't have been discovered earlier and are quickly brought to the attention of the court, if they raise a meritorious defense, then that entitles someone to Section 2-1401 release. And it is, frankly, I don't think the state really addresses that argument, which is squarely in our brief, almost at all. And it's really very, very straightforward and works. He brought the 2-1401 petition in the UUWF case timely. And we know it's timely because while there is a two-year statute of limitations, that is told when there is fraudulent concealment. It is fraudulent concealment as a matter of law. And it is fraudulent concealment as a matter of law when there is a Brady violation. There's no question there's a Brady violation. And that's what got us relief on the murder conviction. But what I'm standing here saying is it's no less fraudulently concealed from Demetrius Johnson in 2006 when he had that conviction. And what I mean by that is the moment it stopped being fraudulently concealed, the moment that became a public document, we went to court. And I said this in my introduction. And we got relief like that. So if it had stopped being fraudulently concealed in 1996, in 2000, in 2004, Demetrius Johnson would have gone to court with the same thing that I did, got his murder conviction vacated, and then he would have been able to possess that weapon just like anybody else, and it would have been totally constitutional. Counsel, aren't you conflating law and equity? I think we have to separate those two. You're talking about this McFadden rule being unworkable. It's not unworkable legally. I mean, it's been used in the federal system. Every federal court follows Lewis. I mean, it's almost down the line. The issue is the equitable side of this. And as you started off your argument today, can the court act as an equitable backstop in a 214, via a 214-01 petition where the relief sought is legally unavailable? I mean, I think we have to separate these two. And, you know, you seem to be conflating them a bit. Well, I hope I'm making my, I'm clearly not making myself clear to you, Your Honor, because there are two separate section 214-01 arguments that I raise in this brief and that are before you, the court. The one I just made, I hope, is entirely based on a statutory reading and legally of section 214-01. And that is simply, again, I'm going to try to succinctly say it. It's simply that he brought a timely 214-01 petition that has newly discovered facts, and those facts would have provided him a meritorious defense to carrying that weapon. It's as simple as that. That is 214-01 law from Air Room and all those other cases. So how does the court determine when we apply your equitable rule and when we follow legal rules in stare decisis? How are we going to make that decision? Sure. I mean, and that is the second question. And there's no question, you're right, I just am trying to clarify that. I'm not trying to conflate them. But I do argue for certain that there is the opportunity to grant purely equitable relief under section 214-01. And that is based in the statute itself. I want to be very clear as well, too. I understand it's an equitable principle, but it's based on the statute itself. The reading of the state says it's not in the statute. It's just not true. Section 214-01 says it abolishes quorum nobis. But the next line says all relief heretofore available, whether by any of the foregoing remedies or otherwise, is available. And I spent pages of my brief, and I hope this wasn't like going back in time, but I spent pages of my brief going through a historical understanding of what quorum nobis was and what it was replacing. And I presented whether, I think, six or seven cases, Elman, Nicola, Messick, Elfman, Lawton, Warren County Soil, that all say, yes, in the very rare, in rare circumstances. I'm not saying you should get up here and do it every case. But in rare circumstances, when the law doesn't work to reach the right results, courts do have this opportunity to grant equitable relief. To answer your question, Justice Neville, when is that the appropriate circumstance to do? I think it's this one. I mean, I think it's based on whether or not when we have an individual. I mean, what are the facts here? We have a situation where it's not just that he's innocent, but it's that the government actor, a criminal, has actually caused this innocent man's, ruined this child's life. It's the court. He himself describes his circumstances, which I can't say it any better, when he was at the Certificate of Innocence proceedings, as being dragged by the devil. He lost his mother when he was 15 years old, 16, right after he was arrested. He just didn't get a chance to do what teenagers and people in their 20s do. I don't know how anyone could not find that the government, the government in this case, had dire effects on this man's life. So keep that in context. So the question is, does he have to continue to suffer in perpetuity? Does he have to continue to have this felony conviction? Can he never possess a gun, a Second Amendment, have his Second Amendment rights for the rest of his life? Based on an act that he committed, had he not been convicted, would he have been framed? It would have been totally legal back at the time. So, I mean, the question is whether all my other arguments fail, and I understand the concern about revisiting McFadden and some of the same law. I wish I did better. But the question is whether the Section 214.01 statutory provision, straightforward, doesn't give you the realm of that. I didn't really even talk about that. I think there are serious constitutional concerns here after Bruin. I'm sure you got our motion. I don't know if it was granted to even cite Bruin, but whether or not there is a, it is now the state's burden to historically, to show that there is a historical basis to allow this sort of regulation against someone we now know is innocent, and whether his continued conviction implicates that. It implicates the Constitution in that way. So, but putting all that aside, the question is, can you make a decision in this case that says, think about the equitable considerations, whether that's this court, or whether that's remand, and for argument at a lower court to consider and exercise their discretion. I do believe that this is the rare case that you can act and that the court can exercise discretion. So, I think I'm nearing out of time. Good morning, Your Honors. May it please the Court, Assistant Attorney General Garson Fisher for the People. Your Honors, this is, at its heart, a question of statutory interpretation, and to Justice Tice's question, this court in McFadden engaged in that interpretation of the unlawful use of a weapon by a felon's statute, and concluded that its plain language demonstrates that what the General Assembly intended was for the important matter to be, and that the defendant's status as a felon at the time that he possessed a firearm. Even though it was essentially void? Well, it was not. In this case, it was not a void conviction. This court has always distinguished, via its void ab initio doctrine, between void convictions, a conviction subject to a statute that was subsequently declared facially unconstitutional, and a conviction that was overturned for any other reason. No matter how serious the errors of criminal procedure that occurred to justify vacating the defendant's predicate felony, he was a felon at the time that he possessed a firearm. And the General Assembly's intent, both from the plain language of the statute and from this court's review of the statute, is simply that, yes, so long as a defendant's status was that of a felon at the time he possessed a firearm, it is not relevant to his UUWF conviction that he subsequently had the predicate felony reversed. Is that the difference between this case and NG? Well, it is an important difference between this case and NG. I would first say, Your Honor, that NG is just an opposite to this case, because this case is about interpreting the UUWF statute as a violation of the UUWF. And NG was a parental rights case. It did not engage in statutory interpretation of the UUWF statute. Indeed, the NG Court acknowledged that McFadden was an opposite to its consideration, because McFadden was interpreting a specific statutory provision. Was the prior conviction of the father in NG, wasn't that conviction void? That is also a distinction, Your Honor. To the extent that the reasoning of NG may have carved out an exception to the General Assembly's general rule that felon status is what matters, that exception is limited to those narrow sample of people. A statute that is void, officially unconstitutional, is void ab initio. It's as if the statute never existed. Therefore, under this Court's doctrine, it is arguably that it's as if the conviction never existed, and therefore can have no future consequences. There is no similar rule that applies to convictions vacated for any other reason. Even actual innocence? It just doesn't seem to follow. Well, I think that the question is, bear with me, Your Honor, I want to break this down into a couple of steps here. The statute, the plain language of the statute, demonstrates what the General Assembly's intent was. As this Court held in McFadden, the intent was that a defendant have to clear his felon status through the judicial process before he possesses a firearm. In a circumstance where the conviction was void, arguably the General Assembly didn't have the authority to require a defendant to take that additional step before possessing a firearm. But there is no reason that the General Assembly can't require all other felons to clear their felon status through the judicial process before they possess a firearm. So an argument could be made to the General Assembly that there are policy reasons to consider an exception, but Petitioner here is asking this Court to carve out an exception to the UUWF statute that's simply not in the statute. So the Court would have to rewrite the General Assembly's statute to grant the petitioner relief under the statute. So in this case, because of the wrongdoing of a government actor, this man got a conviction, correct? And went to jail. Yes, and that conviction was overturned. And so, but because of that wrongdoing and that conviction, he then is arrested for this other charge, and who knows what kind of neighborhood he was in or what kind of circumstances were there when he was arrested with a firearm. But because of the wrongdoing, and he wasn't supposed to have it here, you're saying that this other conviction should stand. Does that seem a little like benefiting from the wrongdoing by the government? I mean, that's what happened here, right? The wrongdoing of a government actor caused the conviction, and then this man was later arrested because he was within the time frame before the conviction. And so that's what happened here, right? I mean, that's what happened here, right? Your Honor, a couple of points in response to your question. First off, this Court looked at basically that same question in McFadden and concluded, as have the federal courts, including the U.S. Supreme Court, that there is nothing unjust or unfair about requiring a defendant to clear his felon status prior to possessing a firearm. Yes, Your Honor, he was convicted of a crime due to government wrongdoing, but that crime was the murder that's now been vacated. He was convicted of illegally possessing a firearm because while he still had felon status, he chose to possess the firearm. We have some information from... But that approach is still benefiting the wrongdoing of the government actor, isn't it? I don't believe it's... Well, the General Assembly made an intentional determination that it does not matter, and that is demonstrated in the unlawful use of a weapon by a felon statute. There are all kinds of circumstances... Your Honor, you said that the defendant would have had to clear his name of a felony prior to carrying the gun to the court. He didn't have the information. Didn't that information come to him later and then he acted on it immediately? So how could he be punished for something he couldn't do, which was clear his name as a felon? He wasn't punished for not having cleared his name as a felon. He was punished for illegally possessing a firearm... As a felon. As a felon, yes, Your Honor. Right, and if he wasn't a felon, if he knew that information, he would have cleared his name. But he really wasn't a felon because he was found actually innocent. So we're talking about just some time frame issue here. That's more procedural than substantive, and I think that we have to look at the substantive issues here. Your Honor, first off, the General Assembly certainly could have written an exception into the statute where a defendant, where a felon could have written an exception. But the statute doesn't have such an exception. And since we're being guided by the General Assembly's intent, as demonstrated by the plain language of the U.S. Supreme Court, the statute doesn't have such an exception. But the actual, you know, guilty situation for the defendant was based on fraud and by a government actor. So why wouldn't an exception be possible? Why would the General Assembly think that somebody would be able to do that? Why wouldn't somebody be committing fraud to find somebody guilty in the first place? I mean, there's not every, you expect someone to be found guilty according to justice, not fraud. And this fraud, I think, is a big element in this situation. Well, given the purpose of the UUWF statute, which is to keep firearms out of the hands of potentially irresponsible, dangerous people, that's advanced by requiring felons to clear their status first. Because you can't have felons engaging in self-help and choosing to carry a firearm, believing that they will eventually. He wasn't a felon. Well, at the time, he was a felon, Your Honor. That's undisputed. That's why I say, why isn't it void? Because this Court has held that convictions are void either for a lack of jurisdiction or because the statute was void ab initio. And other convictions that are overturned, regardless of how serious the procedural error, regardless of whether the conviction is constitutionally infirm, it's a Brady violation, Your Honor. And it's a serious one in this case. He had his conviction overturned, but it is a Brady violation. Similar to the fact that this Court has held that someone whose license has been revoked because of a DUI can't drive on that revoked license because they hope that they will have that revocation overturned, even if they do subsequently have that revocation overturned. Well, that's a totally different kind of situation than this one, where you have wrongdoing by the government. His rights pursuant to that, because of that wrongdoing of the government, were vindicated. He had his conviction that resulted from that wrongdoing overturned. Not totally vindicated, because then he stands here, and you stand here, saying that because of that wrongdoing, this other conviction would justify it. Because his status at the time was that of a felon. At that time, he was a felon. At that time, he could not legally possess a firearm. And he chose to possess a firearm at that time. That is an entirely different offense. Yes, there's a predicate felony. Yes, he subsequently had the predicate felony overturned. But the UUWF statute's plain language, purpose, and policy dictates that a defendant who believes he's been wrongfully convicted first get his felon status cleared through the judicial process before he possess a firearm. There are a minority of states that have broken from Lewis, and probably the majority of that minority have done so based on statutory method, correct? Yes, Your Honor. The states that depart... So it's up to the legislature to make this switch? Yes, Your Honor. And the cases that are cited in Petitioner's brief, where courts have departed from Lewis, those states have changed the statute. They have chosen to pass statutes that are substantively different than Illinois' felon in possession statute, than the federal felon in possession statute, which this court recognized in McFadden was substantively indistinguishable from Illinois'. And therefore, consistent with Lewis, and consistent with all of the federal courts that have followed on Lewis, concluded, A, that the statute demonstrates clear legislative intent that a felon clear his status before he possesses a firearm. And B, that there is not a due process or Second Amendment problem created by, and indeed as the court said, no unfairness created by requiring defendants to clear their status prior to possessing a firearm. In this instance, there are no allegations of bad acting on the part of the government as it relates to the unlawful possession of a weapon by a felon, is that correct? That is correct, Your Honor. And I don't think it's necessary to belabor the discussion about equitable remedies through 214-01 too much, but just to the idea that there is some sort of new factual information related to the UUWF conviction that could be raised through a 214-01, there is not. The new factual information went to the murder conviction. The fact that's relevant to the UUWF conviction is that his status at the time was that of a felon. Counsel, does the recent U.S. Supreme Court case of Bruin instruct us at all in this case? It doesn't change anything, Your Honor, either in the outcome or in the court's reasoning, because this court has always upheld restrictions on possession by felons at the first step of the old two-step analysis. And Bruin didn't do anything to alter the first step. Bruin, to be sure, changed the analysis writ large or clarified the analysis that courts should undertake writ large in Second Amendment cases by holding that no-means-ends analysis was appropriate in Second Amendment cases. But this court has always recognized that limitations on possession by felons are consistent with the nation's historical tradition of regulating firearms. And that's the determination that the court reached in McFadden with regard to this statute. That's still the determination that would apply in this case, because that first-step analysis resolves it. There was never a need to go to the second-step analysis, so Bruin doesn't change anything with regard to this statute. Unless Your Honors have any further questions, the people asked this court to, as I said, to be brief. And then we will affirm the dismissal of Petitioner 214-01 and his conviction for unlawful possession of a weapon by a felon. Thank you, Your Honors. Thank you, Mr. Fischer. Mr. Teffer? So, Counsel, I'm going to jump right in and say this, or answer this question. As this court decides that we will continue to interpret this statute as we decided in 2016 in the McFadden case, you seem to be arguing that something else should happen beyond the strict interpretation of the statute. The strict interpretation of the statute doesn't seem fair or right. So my question is really two parts. How does a court rewrite a statute? How does this court add language to a statute that we've found is clear and plain language and unambiguous? How does a court do that? And then secondly, let's say we agree with you. This is wrong. This isn't fair. What specific language are you suggesting that we adopt as an exception to the statute as its purpose? Only in cases where there's been a finding of actual innocence? How broadly would we write it? To start with my first question, how does this court rewrite the statute that was adopted by the legislature? Thank you, Justice Price. I want to look at the UUWF statute because the state repeatedly, and I know it was looked at in McFadden, but let's look at what it actually says. And it says, and this came up in Lewis in the dissent, and no one's ever looked at it. You know, when you get up here and you're arguing dissents, you're probably not in the greatest position. But look at this statute. It says under Section 24-1.1a, it says, it is unlawful for any person to knowingly possess, on or about his person or on his land, any firearm or any firearm or ammunition if the person, quote, has been convicted of a felony under the laws of this state. How does that even implicate the McFadden rule in the statute? The McFadden rule in and of itself, how does that even implicate vacate first under the plain language of this statute? If you were convicted ever, even if you got it vacated later and then possessed a gun, that wouldn't work. That you... But isn't McFadden another case to talk about the historical fact? There was a historical fact that this gentleman was convicted of murder, right? Correct. And it wasn't... So how, then what else are you trying to say? How broadly should we rewrite the statute? But I believe you're... Only when there's been a finding of actual innocence or if the condition's reversed on some other ground, if it's remanded for trial. What new language to the statute are you looking at? Sure. But your decision in McFadden, Your Honor, did say if they vacate first, right? If they vacate first, then they can possess and they don't have any other felonies, then this isn't implicated. What I am saying is the plain language of this statute would prohibit an individual who vacated first from possessing a felony because this just has been convicted of a felony. It doesn't... But isn't it as if the conviction never occurred in that instance? Right. And I think because of the void ab initio. And that gets to the second question of where we should draw the line. And I go right back to Justice Burke. I think, look, I want to draw the line where my client wins. No question about that. But he wins under any of them. Anywhere you draw the line that I'm asking you for. I mean, unless you draw the line right at void. But Ngidro moved the line and said, well, if it's void ab initio. And I think what Justice Burke is saying, which is entirely my position, is what's the difference between void ab initio and someone who's actually innocent? The exact same thing is they did not commit a crime. Demetrius Johnson never committed a crime. That's been adjudicated. Counsel, counsel, counsel. We have a lot of cases and discussion talking about voidness. We talk about jurisdiction. We talk about big ideas like that. And none of them have to do with something like this where conviction has been vacated. The whole idea of this void ab initio is deeply rooted in our jurisprudence. And you're asking us to redefine that. I'm asking you. Look, I think what NG did in my position is NG redefined, made an exception to this statute. So if you want to call that rewriting it, I don't think it's rewriting it because it wouldn't even apply to McFadden. I mean, it wouldn't even apply to someone who vacated first, is what I'm saying. So I think NG stands for the proposition there are circumstances void ab initio in that case. I'm sorry, NG stands for void ab initio in those cases. And look, as far as it only applying to parental rights, every single court, and not your court, but every single appellate court, and we cited them, and there was just one earlier this week has said it applies to criminal cases, every single one. Counsel, isn't it true that the appellate court never considered the Certificate of Innocent? That's certainly true, yes. There's no prohibition for us to recognize the Certificate of Innocent and go from there. Absolutely. I mean, there's none of the concerns that were in NG about not having it in the record. I mean, I don't think you have to. It's in the record. We supplemented the record with the agreement of the state throughout this process. So I guess what I'm saying is, look, I mean, at the time in 2006, it was a proper conviction. What I'm saying is, just like in NG, just like even in McFadden, if you go and get it later, just like in NG, if you go and get the predicate vacated and you show that if you want to draw the line of actual innocence, I think that's an appropriate line to draw that you can also then seek and file a 214-01 petition to get the UUWF conviction, just as Mr. Johnson did here. That's what I would say. But you agree that in NG, it was void. The dad's prior conviction was void. And that is not the situation here. I agree, except what I say is, NG itself talked about two paths. It talked about procedural convictions that are vacated on procedural grounds that don't go to the substance of whether or not a crime was committed or whether they're void or no crime was committed at all. This doesn't squarely fit in either, I guess, or it says void. What I'm arguing is it fits far more closely in the second pattern of void because no crime was committed at all. I understand there's history here with the void doctrine. What I'm saying is this is a unique circumstance and it's far closer to void than it is based on some procedural reason. I mean, we can say it's Brady and procedural all we want. He's certified innocent. We know that. And I guess the last thing I would say, and I don't want to beat a dead horse, but this whole idea that in the context of this case that he should have to vacate first is absurd and unjust. Reminder, he directly appealed this conviction. Can I ask you, in 1401, it's a continuation of the Commonwealth Doctrine of the Corps of Novice. Correct. Yes. And this kind of situation, doesn't this fit the traditional, I'm going back to the common law, Corps of Novice situation? Certainly. That's where I ended my initial argument. I think certainly there is equitable reasons and under Corps of Novice, under a strict application, and I don't want to sleep on that. And again, I note the state wasn't asked or didn't even address a total straightforward statutory interpretation, not of the UWF statute, not of equities, but of section 214.01 itself and fraudulent concealment in the context of this UWF statute. I'm still sitting here waiting, what is the response to that? Because I don't think there is one. The reason I'm asking you if the traditional, because we don't seem to be talking about the traditional analysis under Corps of Novice when you have these kinds of facts. And in the common law, this would be a situation where Corps of Novice would grant relief. Is that right? I think it's under the common law, under section 214.01, you can grant relief under a straightforward application of 214. In recent years, courts don't talk about Corps of Novice and they don't talk about all the elements and they have some of these other things they talk about in 14.01. But clearly the 14.01 is a continuation of the common law Corps of Novice approach, is it not? It abolishes Corps of Novice, but gives relief heretofore available under Corps of Novice, exactly. Yes, sir. Look, in the very end of it, there are doctrines that say we should not interpret statutes to achieve unjust or absurd results. And I do very much think if you're saying the statutory language of UWF statute here requires a vacate first, that's absurd in the context of this case. Because he filed a direct appeal, he tried in 1998, it is in the record, in 1998 and 1999, he tried to vacate his conviction on a collateral petition. But it was thrown out because the state was still hiding the evidence. The second he got it, he vacated it. So a vacate first rationale in the application of this statute here would in fact be unjust, absurd, and arguably unconstitutional. I think I'll leave it at that. We did cite Bruin. My one complaint with the analysis of the state in Bruin is they say that it doesn't meet the plain language to even get to this step. I think the language is persons. It's the idea that someone convicted of a felony, let alone who is innocent, is not a person. It was a bit troubling in the state's response to me. But regardless, it is not ultimately a question of whether there is a historical understanding in this particular case to disarm an individual who is a felon, but to disarm an individual who is innocent of the felony he was convicted. So with that, thank you very much. Thank you. Case number 127443, the people of the state of Illinois v. Demetrius Johnson will be taken under advisement by this court as agenda number 22. Thank you, Mr. Tepfer, for your argument and Mr. Fisher for your argument this morning.